UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAI CHUN SHEK, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| LUCKIN COFFEE INC., JENNY ZHIYA QIAN, CHARLES ZHENGYAO LU, REINOUT HENDRIK SCHAKEL, JINYI GUO, JIAN LIU, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., AND NEEDHAM & COMPANY, LLC | |
| Defendants. | |

Plaintiff Wai Chun Shek ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint, alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, based upon the investigation made by and through her attorneys, which included, *inter alia*, a review of the public documents, United States Securities and Exchange Commission ("SEC") filings, analyst reports, information readily obtainable on the internet, press releases, news releases and media reports of Luckin Coffee Inc. ("Luckin" or the "Company"). Plaintiff

believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who: (1) purchased or otherwise acquired publicly traded Luckin securities between May 17, 2019 and January 31, 2020, inclusive (the "Class Period"); (2) purchased or otherwise acquired Luckin American Depository Shares ("ADSs") in or traceable to the Company's public offering of ADSs conducted on or around May 17, 2019 (the "IPO"); and/or (3) purchased or otherwise acquired Luckin ADSs in or traceable to the Company's public ADSs offering conducted on or around January 10, 2020 (the "2020 Offering"). Throughout the Class Period, Defendants made materially false and/or misleading statements regarding the Company's business, operations, and compliance to regulatory policies.

2. Plaintiff pursues claims to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act, and Section 27 of the Exchange Act as the alleged misstatements entered and the subsequent damages took place in this judicial district, and the Company conducts substantial business in this district.

6. In connection with the acts, transactions and conduct alleged herein, defendants used the means and instrumentalities of interstate commerce, including United States mails, interstate telephone communications and the facilities of a national securities exchange and market.

## THE PARTIES

7. Plaintiff purchased shares of Luckin common stock during the Class Period between May 17, 2019 to January 31, 2020, with those dates inclusive, as set forth in the accompanying Certification, and has been damaged as a result of Defendants' conduct as alleged herein.

8. Defendant Luckin is a Chinese coffeehouse chain headquartered in Xiamen, the People's Republic of China ("China"). Luckin was incorporated in October 2017, went public in May 2019, and trading on the NASDAQ with the ticker symbol "LK." Luckin is in the restaurant industry and is involved in the sale of coffee, tea, food, and beverages.  The company is the biggest coffee brand in China, with the number of Luckin store locations exceeding the number of Starbucks store locations in China. Luckin's stores follow a "pick-up" model, primarily with locations in business buildings and school campuses that allow customers to order online or choose to pick up from the store. Luckin is a Cayman Islands corporation with principal executive offices located at 17F Block A, Tefang Portman Tower No. 81 Zhanhong Road, Siming District, Xiamen, Fujian, China, 361008. Defendant Luckin is liable for the acts of its executives, directors, and/or officers under the doctrine of *respondeat superior* and common law because all of the wrongful acts complained of herein were carried out within the scope of their

3

employment. The scienter of Luckin's executives, directors, and/or officers and agents of the Company is similarly imputed to Luckin under agency principles.

9. Defendant Jenny Zhiya Qian ("Qian") has served as the Company's Chief Executive Officer ("CEO") and Director throughout the Class Period. Defendant Qian signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

10. Defendant Charles Zhengyao Lu ("Lu") is, and was at all relevant times served as the Chairman of the Board of Directors of Luckin.  Defendant Lu signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

11. Defendant Reinout Hendrik Schakel ("Schakel") has served as the Chief Financial Officer ("CFO") and the Chief Strategy Officer ("CSO") throughout the Class Period. Defendant Schakel signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

12. Defendant Jinyi Guo ("Guo") served at all relevant times as the director of the Company since June 2018. Defendant Guo also served as the Senior Vice President of Product and Supply Chain during all relevant times. Defendant Guo signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

13. Defendant Jian Liu ("Liu") served as a director of the Company since February 2019. Defendant Liu is, and was at all relevant times serving as the Chief Operating Officer ("COO") and Director of the Company. Defendant Liu signed the Registration Statements for the

Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

14. Defendant Hui Li ("Li") served at all relevant times as a director since June 2018. Defendant Li signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

15. Defendant Erhai Liu ("Erhai Liu") served as director at all relevant times since June 2018. Defendant Erhai Liu signed the Registration Statements for the Offerings and is thus liable under the Securities Act for false, untrue, misleading statements and omissions in the Offerings Materials.

16. Defendants Qian, Lu, Schakel, Guo, Liu, Li, and Erhai Liu are referred to collectively as "Individual Defendants."

17. Individual Defendants acted or engaged in conduct in violation of the federal securities laws as alleged herein; by (i) failing to disclose certain information they had a fiduciary duty to disclose; and (ii) acted negligently, knowingly, or recklessly in making materially false and/or misleading statements during the Class Period. Individual Defendants as executives and/or directors possessed the power and authority to control Luckin's filings with the SEC, the press releases, and other media publications. The Individual Defendants were aware of the false representations because they were provided with the copies of Luckin's filings and press releases alleged in this Complaint, which were misleading before the issuance. During that time, the Individual Defendants had the ability and opportunity to make changes and correct them prior to issuance. Due to the Individual Defendants' executive positions at Luckin, they knew that the facts adverse to the Company had not been disclosed to the public and that positive representations were made which were materially false and misleading. The Individual

Defendants are liable for the false statements and/or omissions pleaded herein. Furthermore, the Individual Defendants signed the Registration Statements for the Offerings and are, therefore, personally liable.

18. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a financial services company located in New York, New York. Credit Suisse served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

19. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is a financial services company located in New York, New York. Morgan Stanley served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

20. Defendant China International Capital Corporation Hong Kong Securities Limited ("CICC") is a financial services company located in Beijing, China. CICC served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

21. Defendant Haitong International Securities Company Limited ("Haitong") is a financial services company located in New York, New York. Haitong served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

22. Defendant KeyBanc Capital Markets Inc. ("KeyBanc") is a financial services company located in Cleveland, Ohio. KeyBanc served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

23. Defendant Needham & Company, LLC ("Needham") is a financial services company located in New York, New York. Needham served as an underwriter for the Offerings, helped draft and disseminate the Registration Statements, as well as solicited investors to purchase Luckin ADSs issued pursuant thereto.

24. Defendants Credit Suisse, Morgan Stanley, CICC, Haitong, KeyBanc, and Needham are referred to herein collectively as the "Underwriter Defendants."

25. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows;

(a) The Underwriter Defendants are investment-banking institutions that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of Luckin's IPO and shared millions of dollars in fees total. The Underwriter Defendants organized a multi-city road-show prior to the IPO, during which they and Luckin representatives met with potential investors and presented highly positive information about Luckin, its operations and its financial prospects.

(b) The Underwriter Defendants also entered into an Underwriting Agreement with Luckin, where the Agreement stated: "The Company will indemnify and hold harmless each Underwriter, its respective partners, members, directors, officers, employees, agents, affiliates and such affiliates' directors, officers, employees and agents, and each person, if any, who controls such Underwriter within the meaning of Section 15 of the Act or Section 20 of the Exchange Act (each an "Indemnified Party"), from and against any and all losses, claims, damages or liabilities, joint or several, to which such Indemnified Party may become subject…" The Underwriter

Defendants also made certain that Luckin had purchased extensive liability insurance for its directors and officers.

(c) The Underwriter Defendants also assisted Luckin's Individual Defendants in planning the IPO, and supposedly conducted an adequate and diligent investigation into Luckin's business and operations. The Underwriter Defendants required the investigation as a condition precedent in going forward with the IPO. During the course of the investigation, the Underwriter Defendants had vast access to internal, confidential, and current corporate information concerning Luckin's most up-to-date operational results, financial results, and prospects.

(d) The Underwriter Defendants had vast access to Luckin's internal corporate documents. Underwriter Defendants met with Luckin's attorneys, management and top executives during engagements in drafting the IPO. During sessions between Luckin and the Underwriter Defendants, agreements were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Luckin securities would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures Luckin would make in the Registration Statement; and (v) what responses Luckin would make to the SEC in connection with its review of the Registration Statement. As a result of these commingled contacts and communications between the Underwriter Defendants' representatives and Luckin's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Luckin's existing problems as detailed herein.

(e) The Underwriter Defendants allowed the Registration Statement to be filed with the

SEC and declared effective to offer sales of securities to the public registered thereby,

including those to Plaintiff and the other members of the Class.

26. Luckin and the Underwriter Defendants entered into an Underwriting Agreement with

respect to the ADSs being offered in the IPO. Subject to the Underwriting Agreement's terms

and conditions, each of the Underwriter Defendants severally agreed to purchase from Luckin

the number of ADSs set forth opposite its name below at a price of $17.00 USD per ADS

payable in cash on the closing date of the IPO:

| Underwriter | Number of ADSs |
|---|---|
| Credit Suisse Securities (USA) LLC | 20,130,000 |
| Morgan Stanley & Co. LLC | 4,950,000 |
| China International Capital Corporation Hong Kong Securities Limited | 3,300,000 |
| Haitong International Securities Company Limited | 3,300,000 |
| | 742,500 |
| KeyBanc Capital Markets Inc. | 577,500 |
| Needham & Company, LLC | 33,000,000 |
| Total | |

27. Defendants Luckin, the Individual Defendants and the Underwriter Defendants are

collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure

23(a) and (b)(3) on behalf of a class consisting of all persons who acquired Luckin common

stock (hereinafter "ADS," "shares," or "securities") publicly traded on the NASDAQ during the

class period between May 17, 2019 to January 31, 2020, both dates inclusive (the "Class

Period") and who were damaged thereby (the "Class"). Included in the Class are all persons and

entities who purchased Luckin ADS pursuant to and/or tradeable to the Company's Registration

9

Statements issued in connection with the Company's IPO and 2020 Offering and all persons and entities who purchased Luckin ADSs during the Class Period at artificially inflated prices and suffered damages. Excluded from the Class are the Company, its officers and directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns, and any entity in which the Company has a controlling interest or of which the Company is a parent or subsidiary.

29. The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impractical. The Company was actively traded on the NASDAQ with approximately 253 million shares of common stock outstanding. While the exact number of Class members is unknown to the Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, hundreds if not thousands of members in the proposed Class.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether Defendants engaged in acts or conduct in violation of the federal securities laws as alleged herein;

    b.    Whether Defendants had a duty to disclose certain information regarding misrepresented material facts about the financial condition and business during the Class Period;

    c.    Whether defendants acted negligently, knowingly, or recklessly in making materially false and/or misleading statements and/or omitting or failing to correct such

statements or material facts upon learning that they were materially false and/or misleading during the Class Period;

d.      Whether Defendants caused the Company to issue false and/or misleading SEC Filings and/or press releases during the Class Period;

e.      Whether the market price of the Company's common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

f.      Whether members of the Class have sustained damages and, if so, the proper measure of damages.

31. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of the federal law as complained of herein.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that is antagonistic or conflicting to those of the Class.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because a joinder of all members of the Class is impractical. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### Fraud-on-the-Market Doctrine

34. The market for Luckin securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose,

Luckin's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Luckin and market information relating to Luckin, and have been damaged.

35. During the Class Period, the artificial inflation of Luckin's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Luckin's business, operations, and prospects. These statements of material misrepresentation and/or omissions created an unrealistically positive assessment of Luckin and its business, operations, and prospects; thus, causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's stock. Defendants' materially false and/or misleading statements during the Class Period caused Plaintiff and other members of the Class to purchase the Company's securities at such artificially inflated prices, and each of them have sustained damages as a result.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a.  Defendants made public misrepresentations or failed to disclose material facts regarding Luckin's financial situation during the Class-Period;

    b.  Luckin's shares met the requirements for listing and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

    c.  The omissions and misrepresentations were material;

d.   Luckin communicated with public investors via established market communications where Luckin would publish press releases and public disclosures with the financial press and other related reporting services;

e.   Luckin was monitored by a number of securities analysts who work for major brokerage firms that publish articles widely distributed to the public;

f.   The securities of the Company traded at all relevant times on the NASDAQ, an efficient and open market;

g.   The misrepresentation and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

h.   Plaintiff and the members of the Class, without knowledge of the misrepresented facts, purchased their Luckin securities between the time defendants failed to disclose and/or misrepresented material facts and the time the truth was disclosed.

37. As a result of the foregoing, the market for Luckin's securities promptly digested current information regarding Luckin from all publicly available sources and reflected such information in Luckin's stock price. Under these circumstances, all purchasers of Luckin securities during the Class Period suffered similar injuries through their purchase of Luckin's securities at artificially inflated prices and a presumption of reliance applies.

38. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972), because the Class's claims are largely in part grounded on Defendants' material misstatements and/or omissions. Since this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects, information that Defendants were obligated to disclose positive proof of reliance is not a prerequisite to

13

recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## THE SAFE HARBOR PROVISION IS INAPPLICABLE

40. The statutory safe harbor provision provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors and could cause actual results to differ materially from those in the purportedly forward-looking statements.

41. In the alternative, to the extent that the statutory safe harbor provision is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Luckin who knew that the statement was false when made.

## SUBSTANTIVE ALLEGATIONS

42. Based on its April 22, 2019 F-1 IPO filing, the Company approached the coffee retail business through an extensive marketing strategy using mobile applications and pick-up stores. The Company's products mainly include freshly brewed drink, juices, light meals, but is best known for its main brand Luckin Coffee. Furthermore, in the filing, Luckin Coffee represented itself as the fastest-growing coffee network, in terms of number of store locations and cups of coffee sold. Luckin represented itself as a technology-driven coffee network built upon their mobile applications and store network. Their mobile applications provides a 100 percent cashier-less environment that would enhance customer experience. Furthermore, the store network strategically focused on having pick-up stores located amongst areas with high demands for coffee, such as office buildings, commercial areas, and university campuses.

### April 22, 2019 Offerings Form F-1 and Press Release

43. As state above, on April 22, 2019, the Company filed with the SEC a Registration Statement on Form F-1 for the IPO of Luckin Coffee Inc.

44. Thereafter, on May 17, 2019, the Company issued a press release announcing that the pricing of its initial public offering of 33,000,000 ADSs at $17.00 per ADS. The press release stated that the underwriters: Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Limited and Haitong International Securities Company Limited had an option, exercisable within 30 days from the date of the final prospectus to purchase an aggregate of 4,950,000 additional ADSs. The press release also confirmed that the registration statement related to the offering had been filed with the SEC and was declared effective.

45. In its April 22, 2019, registration statement filed with the SEC, the Company on pg. 31-32 states as follows:

If we fail to implement and maintain an effective system of internal controls to remediate our material weaknesses over financial reporting, we may be unable to accurately report our results of operations, meet our reporting obligations or prevent fraud, and investor confidence and the market price of the ADSs may be materially and adversely affected.

Prior to this offering, we have been a private company with limited accounting and financial personnel and other resources with which we address our internal control over financial reporting. In connection with the audit of our consolidated financial statements as of and for the year ended December 31, 2018 we and our independent registered public accounting firm identified two material weaknesses in our internal control over financial reporting. As defined in the standards established by the U.S. Public Company Accounting Oversight Board, or PCAOB, a "material weakness" is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

46. According to the Company's Consolidated Statements of Comprehensive Loss filed with the SEC along with the April 22, 2019 F-1 Statement the Freshly Brewed drinks constitute majority of the Company's net revenues. In the report, Luckin reports revenue in three groups: *Freshly brewed drinks, Other Products,* and *Others.* The *Freshly brewed drinks* include products such as freshly brewed coffee, non-coffee drinks, and Luckin Tea. *Other Products* mainly consists of food and beverage items, such as light meals, and "Luckin Pop" products, including other Luckin merchandise. *Others* revenue includes delivery fees paid by Luckin customers.

47. The Registration Statements omitted information that the Company's failure to implement an effective system of internal controls to remediate their material weaknesses over financial reporting would cause them to report falsified and intentionally inflated financial results, which would require a restatement of the filing. The omissions by the Company regarding the effect of the failure to implement an effective system of internal controls, which would consequently lead to significantly inflated financial results, altered the total mix of information made available to the public.

48. Furthermore, the Registration Statements, signed by the Individual Defendants, made numerous misleading and/or false statements regarding the Company's failure to implement an effective system of internal controls, which would later lead to or result in the Company's falsified reporting and intentionally inflated financial results likely requiring a restatement. The specific statements regarding the Company's internal controls over financial reporting was misleading because it did not disclose the extent the lack of internal controls would have over the financial reporting, subsequently resulting in inflated financial results.

### August 14, 2019 Press Release

49. On August 14, 2019, Luckin issued a press release announcing its unaudited financial results for the second quarter ended June 30, 2019.

50. In the press release, Luckin highlighted the following regarding its 2019 second quarter financial results:

a.      "The net revenues from products in the quarter were RMB870.0 million (US$126.7 million), representing an **increase of 698.4%** from RMB109.0 million in the same quarter of 2018." (Emphasis Added)

b.      "Cumulative number of transacting customers increased to 22.8 million from 2.9 million as of the end of the second quarter of 2018. During the second quarter of 2019, the Company acquired 5.9 million new transacting customers."

c.      "Average monthly transacting customers in the quarter were 6.2 million, representing an **increase of 410.6%** from 1.2 million in the second quarter of 2018." (Emphasis Added)

d.      "Average monthly total items sold in the quarter were 27.6 million, representing an **increase of 589.7%** from 4.0 million in the second quarter of 2018." (Emphasis Added)

e.     "Total number of stores at the end of the quarter were 2,963 stores, representing an **increase of 374.8%** from 624 stores at the end of the second quarter of 2018." (Emphasis Added)

f.     "Store level operating loss in the quarter was RMB55.8 million (US$8.1 million) decreasing from a loss of RMB81.7 million in the second quarter of 2018."

51. On August 14, 2019, Luckin filed with the SEC form 6-K which reiterated and attached the press release information as Exhibit 99.1. The filing of this form was authorized and signed by Defendant Schakel the CFO and CSO of the Company.

**November 13, 2019 Press Release and Form 6-K Filing with SEC**

52. On November 13, 2019, Luckin issued a press release announcing its unaudited financial results for the third quarter ending September 30, 2019.

53. In the press release it highlighted the following:

(1)     "Total net revenues from products in the quarter were RMB 1,493.2 million (US $208.9 million), representing an **increase of 557.6%** from RMB227.1 million in the same quarter of 2018." (Emphasis added).

(2)     "Average monthly total items sold in the quarter were 44.2 million, representing an **increase of 470.1%** from 7.8 million in the third quarter of 2018." (Emphasis added).

(3)     "Cumulative number of transacting customers increased to 30.7 million, representing an **increase of 413.4%** from 6.0 million as of the end of the quarter of 2018. During the third quarter of 2019, the Company acquired 7.9 million new transacting customers." (Emphasis added).

18

(4)     "Average monthly transacting customers in the quarter were 9.3 million, representing an **increase of 397.5%** from 1.9 million in the third quarter of 2018." (Emphasis added).

(5)     "The total number of stores at the end of the quarter were 3,680 stores, representing an **increase of 209.5%** from 1,189 stores at the end of the quarter of 2018." (Emphasis added).

(6)     "Beverage total net revenues from products per store in the quarter were RMB449.6 thousand (US$62.9 thousand), **representing an increase of 79.5%** from RMB250.5 thousand in the same quarter of 2018." (Emphasis added).

(7)     "Store level operating profit in the quarter was RMB186.3 million (US$26.1 million), or 12.5% of net revenues from products, compared to a loss of RMB126.0 million in the third quarter of 2018."

54. On November 20, 2019, Luckin filed with the SEC form 6-K which reiterated and attached the press release information as Exhibit 99.1. The filing of this form was authorized and signed by Defendant Schakel, the CFO and CSO of the Company.

55. The statements made in those documents as addressed in paragraphs 26-37 were misleading and/or materially false. Defendants engaged in improper practices in order to bolster the Company's stock price. Defendants directly participated in an accounting fraud, which materially overstated the Company's financial results in violation of Generally Accepted Accounting Principles ("GAAP"). Defendants materially overstated the Company's financial results with improper misrepresentations and failure to disclose adverse facts where the Company's failure to implement an effective system of internal controls to remediate their material weaknesses over financial reporting would cause them to report falsified and

intentionally inflated financial results to bolster the Company's stock price. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) Luckin's number of items per-store per-day were inflated including the net-sales per-day, selling revenue per-day, revenue contribution from freshly brewed, other products, and others were inflated; (2) Luckin's financial reporting overstated the truth and misled the public about the overall health of the Company and Luckin did not file a restatement with the SEC; (3) Luckin's reporting of items per order has been overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about Luckin's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis at all relevant times.

56. In knowing or reckless disregard for the truth, Defendants issued and/or participated in the issuance of materially false and misleading statements and financial information to the investing public, as particularized above. These representations were materially false and misleading when made for the reasons set forth herein.

57. In addition, the Defendants not only falsely and materially overstated the Company's earnings and other financial figures but also filed misleading and inaccurate financial statements with the SEC, violating federal regulatory laws and policies.

## THE TRUTH BEGINS TO EMERGE

58. There are currently about 200 Chinese stocks listed on major U.S. stock exchanges. 84 of them are down at least 50 percent in the past year. In 2019, only 13 Chinese companies that were listed in New York were trading above their IPO prices.

59. In recent years, Muddy Waters has targeted various Chinese companies that publicly trade stocks on U.S. markets for fraud. In December 2017, Muddy Waters released a report calling the firm called China Internet Nationwide Fncl Srvcs Inc (NASDAQ ticker "CIFS")

"another worthless Chinese fraud." CIFS's stock is down 98.8 percent since the allegations surfaced. In October 2013, Muddy Waters called NQ Mobile (subsequently renamed to "Link Motion Inc." with NYSE ticker LKM) a "massive fraud." LKM's stock price has dropped from above $10 to 15 cents since the allegations. Muddy Waters also reported evidence of fraud at China MediaExpress Holdings in 2011, and the company's stock was delisted from the NASDAQ just two months following Muddy Waters' report.

60. On January 31, 2020, Muddy Waters published a report alleging that Luckin had fabricated certain of the Company's financial performance metrics, beginning in third quarter 2019. The Muddy Waters Report purported to cite "smoking gun evidence," including *inter alia,* thousands of hours of store video, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since the third quarter of 2019, Luckin had inflated its per-store per-day sales figures, its net selling price per item, its advertising expenses, and its revenue contribution from "other products."

61. With respect to Luckin's number of items per-store per-day, the Muddy Waters Report stated that this number "was inflated by-at least 69% in 2019 3Q and 88% in 2019 4Q, supported by 11,260 hours of store traffic video" recorded by thousands of on-the-ground staff associated with the author, and that the report's "offline tracking results of tracking 981 store-days from 2019 4Q showed 263 items per store per day only," compared to the Company's report of 444 items per store per day for 3Q19 and an estimated 495 items per store per day for 4Q19 based on the Company's guidance for that quarter. Specifically, the Muddy Waters Report estimated that 483-506 items per-store per-day was "implied by 4Q Guidance Product Revenue Guidance of RMB 2.1 billion to RMB 2.2 billion, divided by Net selling price per item of RMB 11.8

(Assuming Luckin to report [sic] 5% sequential growth from 2019 3Q of RMB 11.2) and average store number of 4,094."

62. With respect to Luckin's number of items per-store per-day, the Muddy Waters Report stated that this number "was inflated by at least 69% in 2019 3Q and 88% in 2019 4Q, supported by 11,260 hours of store traffic video" recorded by thousands of on-the-ground staff associated with the author, and that the report's "offline tracking results of tracking 981 store-days from 2019 4Q showed 263 items per store per day only," compared to the Company's report of 444 items per store per day for 3Q19 and an estimated 495 items per store per day for 4Q19 based on the Company's guidance for that quarter. Specifically, the Muddy Waters Report estimated that 483-506 items per-store per-day was "implied by 4Q Guidance Product Revenue Guidance of RMB 2.1 billion to RMB 2.2 billion, divided by Net selling price per item of RMB 11.8 (Assuming Luckin to report [sic] 5% sequential growth from 2019 3Q of RMB 11.2) and average store number of 4,94."

63. With respect to Luckin's net selling price per item, the Muddy Waters Report disclosed that its staff "gathered 25,843 customer receipts and found that Luckin inflated its net selling price per item by at least RMB 1.23 or 12.3% to artificially sustain the business model," and that, "[i]n the real case, the store level loss is high at 24.7%-28%." The report also noted that "25,843 receipts indicate 1.08 and 1.75 per order for pick-ups and delivery orders respectively or blended 1.14," and that "[t]his marked a continuously downward trend of items per order from 1.74 in 2018 1Q to 1.14 in 2019 4Q."

64. Regarding Luckin's advertising expenses, the Muddy Waters Report asserted that "[t]hird party media tracking showed that Luckin overstated its 2019 3Q advertising expenses by over

150%," and that "[i]t's possible that Luckin recycled its overstated advertising expense back to inflate revenue and store-level profit."

### The Huge Losses Suffered by the Plaintiff and the Class
### As a Result of Luckin's Misstatements and/or Omissions

65. On this news, Luckin's ADS price fell $3.91 per share, or 10.74% to close at $32.49 per share on January 31, 2020.

66. In response to the Muddy Waters Report, Luckin denied all of the claims therein. In addition, investor Andrew Left of Citron disclosed that he had taken a long position in Luckin, and, citing from BCC, stated that the Muddy Waters Report would "fall short on accuracy."

67. On February 12, 2020, however, J Capital, a China-focused investment research firm, published a more detailed report supporting the findings in the Muddy Waters report and specifically rebutting Citron's statements in support of Luckin. The J Capital Report stated, in part:

> Citron cited data from "Biz Con China," referring to Business Connect China (BCC), a Shanghai-based expert-network company that also sells data on listed, Chinese-domiciled companies. We managed to see a copy of BCC's report, and right there in the first paragraph is written: "Based on BCC's tracking, we are skeptical about some of Luckin's reported figures." The next paragraph begins: **"*Luckin's reported figure of 444 items sold per day in 3Q19 is likely to be higher than their actual sales." Citron seems to have missed this.*
>
> We know BCC operate with a high degree of integrity but think the methodology used to collect the data was flawed. BCC itself warns clients that "we believe BCC's tracking results portray the optimal situation that Luckin can reach." Notably, ***BCC's tracking results show lower numbers than LK management reports.***
>
>     ****     ***    ***    ***    ***    ***    ***    ***
> It's not all bad news. ***In several areas, BCC's data backed up the data in the Anonymous report. Citron conveniently forgot to mention that in the tweet.***
>
> Luckin has so far issued a blanket denial without providing confirmatory evidence. We short Luckin and ***believe that the work of the anonymous short***

*sellers was credible and complementary to our own analysis of the company's reports.*

(Emphasis added.)

68. Thereafter, on April 2, 2020, Luckin disclosed to the media an internal investigation that found that millions of dollars in sales were fabricated. The press release states as follows:

**BEIJING, China, April 02, 2020 (GLOBE NEWSWIRE)** -- Luckin Coffee Inc. ("Luckin Coffee" or the "Company") (NASDAQ: LK) today announced that the Company's Board of Directors (the "Board") has formed a special committee (the "Special Committee") to oversee an internal investigation into certain issues raised to the Board's attention during the audit of the consolidated financial statements for the fiscal year ended December 31, 2019 (the "Internal Investigation").

The Special Committee is comprised of three independent directors of the Board, Mr. Sean Shao, Mr. Tianruo Pu and Mr. Wai Yuen Chong, with Mr. Shao serving as its chairman. The Special Committee has retained independent advisors, including independent legal advisors and forensic accountants, in connection with the Internal Investigation. The Special Committee has retained Kirkland & Ellis as its independent outside counsel. Kirkland & Ellis is assisted by FTI Consulting as an independent forensic accounting expert. The Internal Investigation is at a preliminary stage.

*The Special Committee today brought to the attention of the Board information indicating that, beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had engaged in certain misconduct, including fabricating certain transactions. The Special Committee recommended certain interim remedial measures, including the suspension of Mr. Jian Liu and such employees implicated in the misconduct and the suspension and termination of contracts and dealings with the parties involved in the identified fabricated transactions.  The Board accepted the Special Committee's recommendations and implemented them with respect to the currently identified individuals and parties involved in the fabricated transactions. The Company will take all appropriate actions, including legal actions, against the individuals responsible for the misconduct.*

*The information identified at this preliminary stage of the Internal Investigation indicates that the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019 to the fourth quarter of 2019 amount to around RMB2.2 billion. Certain costs and expenses were also substantially inflated by fabricated transactions during this period.* The above figure has not been independently verified by the Special Committee, its

24

advisors or the Company's independent auditor, and is subject to change as the Internal Investigation proceeds. The Company is assessing the overall financial impact of the misconduct on its financial statements. As a result, investors should no longer rely upon the Company's previous financial statements and earning releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019, including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements. The investigation is ongoing and the Company will continue to assess its previously published financials and other potential adjustments.

Luckin Coffee will release additional information concerning the Internal Investigation in due course and is committed to taking appropriate measures to improve its internal controls.

69. As a result of the press release in para. 49 above, Luckin ADSs fell $19.80 per ADS or approximately 75.6% to close at $6.40 per ADS on April 2, 2020, damaging its investors.

70. Since the initial public offering, and as a result of Defendants' false representations and material omissions which were made with scienter because the Defendants knew or recklessly disregarded that the Class Period SEC Filings and the Class Period press releases were materially false and misleading as described above; knew or were reckless in not knowing that the false inflated financial results would be issued or disseminated to the investing public; and knowingly and substantially participated in the preparation and/or issuance or dissemination of such statements or documents.

71. The China Securities Regulatory Commission ("CSRC"), the Chinese securities regulatory government agency, issued a statement on April 3, 2020 stating that it would investigate claims of fraud regarding Luckin Coffee Inc. and strongly condemned any financial misconduct. Luckin refused requests to comment on the CSRC's statement.

72. Defendant Lu, the Company's Chairman, stated on social media that he was "ashamed" and "accepted all questions and criticisms," while bearing all responsibility and promising to do his best to recover the loss.

73. Rather than concede to the fraud, Defendant Luckin sought to sidestep its obligations by placing virtually all wrongdoing on Defendant Liu. Luckin's strategy to absolve the Company, the Underwriter Defendants and the Individual Defendants, except for Defendant Liu, of liability by issuing a statement on April 2, 2020 stating that that Luckin's COO, Defendant Liu, along with several employees reporting to him, fabricated transactions that spanned the second through fourth quarters of 2019 and involves as much as RMB 2.2 billion (approximately $310 million). Luckin has since suspended Defendant Liu from his position at the Company and terminated contracts with the subordinate employees involved in the matter. Luckin claims it has formed a special committee to perform an internal investigation on the allegations of fraud. All other Individual Defendants currently remain at their designated positions at Luckin. The Company's attempt to mitigate the damages to Luckin's market value creates a false impression that other Underwriter Defendants and Individual Defendants, except Defendant Liu, were not involved in the alleged scheme to defraud.

74. As a result of Defendants' false representations and/or acts and/or omissions, and the decline of the Company's ADS, Plaintiff and other Class members have incurred significant losses and have been damaged.

## CAUSES OF ACTION

### COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against Luckin and the Individual Defendants

75. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76. During the Class Period, Defendants carried out a plan, scheme, and course of conduct in which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members as alleged herein; and (ii) cause Plaintiff and other

members of the Class to purchase Luckin securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, defendants, and each of them, took the actions set forth herein.

77. Defendants (i) employed devises, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Luckin's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

78. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Luckin's financial well-being and prospects as specified herein.

79. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse confidential information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Luckin's market value and performance and continued substantial growth, which included: (i) the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Luckin and its business operations and future prospects in light of the circumstances under which they were made not misleading as set forth more particularly herein; and (ii) engaged in transactions, practices and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

80. Each of the Individual Defendants' primary liability, and controlling personal liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of the Defendants were aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded were materially false and/or misleading.

81. The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, and/or acted with reckless disregard for the truth in that they failed to ascertain and/or to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly and/or recklessly and for the purpose and effect of concealing Luckin's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions

alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking necessary steps to discover whether those statements were false or misleading.

82. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Luckin's securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and/or misleading statements made by the Defendants, or upon the integrity of the market in which the securities are traded, and/or in the absence of adverse material information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and other members of the Class acquired Luckin securities during the Class Period at artificially inflated prices and sustained damages as a result.

83. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were unaware of their falsity and believed them to be true. Had Plaintiff, other members of the Class, and the marketplace known the truth regarding the problems that Luckin was experiencing—which were not disclosed by Defendants—Plaintiff and other members of the Class would not have purchased or otherwise acquired Luckin securities, or, even if they had acquired securities, they would not have acquired them at such inflated prices during the Class Period.

84. Based on the foregoing above, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

85. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

86. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87. The Individual Defendants acted as controlling persons of Luckin within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the company with the SEC and disseminated to the investing public, the Individual Defendants had the power and authority to influence and control, and did in fact influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants had the power to influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or amend the statements.

88. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to

control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

89. As set forth above, Luckin and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their professional positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### COUNT III
### Violation of Section 11 of The Exchange Act
### Against All Defendants

90. Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

91. Plaintiff brings this Count pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of herself and other members of the Class who purchased or otherwise acquired Luckin securities pursuant to or traceable to the Company's Offerings.  In purchasing and/or acquiring Luckin securities, the Plaintiff and each member of the Class during the Class period acquired them in reliance of the Registration Statements, on which, the Individual Defendants were signatories. The Registration Statements that became effective on May 16, 2019 and later the Registration Statements which became effective on January 9, 2020 were false and/or misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or omitted to disclose material facts required to be stated therein.

92. Luckin is the registrant for the share offering. As issuer of these securities, Luckin is strictly liable to Plaintiff and the Class members for the misstatements and/or omissions contained in the Registration Statements.

93. When the Plaintiff and the Class members purchased or acquired their shares of Luckin securities, they were not aware of the misstatements and/or omissions contained in the Registration Statements filed with the SEC.

94. The Underwriter Defendants Morgan Stanley, CICC, Credit Suisse, Haitong, KeyBanc, and Needham served as Luckin's underwriters of the Company's shares, and were responsible for the contents and dissemination of the Registration Statements.

95. The Underwriter Defendants were responsible for the contents and dissemination of the Registration Statements. Each of the Underwriter Defendants signed or authorized the signing of the Registration Statements.

96. None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and/or were not misleading.

97. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

98. Plaintiff and other members of the Class purchased and/or acquired shares of Luckin pursuant and/or traceable to the Registration Statements.

99. Plaintiff and other members of the Class sustained damages. At the time of their purchases of shares of Luckin, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.

100. Less than one year elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based which caused the Plaintiff and the Class Members during the Class Period to purchase Luckin securities at inflated prices.

101. When Plaintiff and members of the Class purchased Luckin securities during the Class Period, the true value of Luckin Securities was substantially lower than the price that was paid by Plaintiff and members of the Class.

102. For the foregoing reasons, Plaintiff and the other members of the Class are entitled to damages measured pursuant to Section 11 (e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

### COUNT IV
### Violation of Section 15 of The Securities Act
### Against All Defendants

103. Plaintiff repeats and realleges each and every allegation contained above. For the purposes of this Count, Plaintiff asserts them against the Individual Defendants, each of whom was a control person of the Company during relevant times.

104. The Individual Defendants and the Underwriter Defendants by virtue of its responsibilities for providing investment advisory for the company were in the positions to control and did in fact control the false and misleading statements and omissions contained in the Registration Statements.

105. As director and/or senior officer of the Company, each of the Underwriter Defendants and the Individual Defendants had the power and authority to control the statements contained in the Registration Statements.

106. Less than one year elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based which caused the Plaintiff and the Class Members during the Class Period to purchase Luckin securities at inflated prices.

107. Based on the foregoing conduct above, for which the Company is primarily liable, the Underwrite Defendants and the Individual Defendants are jointly and severally liable with and to the same extent as Luckin pursuant to Section 15 of the Securities Action, 15 U.S.C. 77(o).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment and relief as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel for the Class under the Federal Rules of Civil Procedure Rule 23;

(b) Awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Awarding Plaintiff and other members of the Class pre-judgment and post-judgment; and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: April 10, 2020

Respectfully submitted,

**LIU LAW, INC.**

By: _____

Long Z. Liu (Pro Hac Vice Pending)
Abraham S. Odabachian (Pro Hac Vice Pending)

123 East Valley Boulevard, Suite 207
San Gabriel, California 91776
Telephone: (626) 927-9009
Facsimile: (815) 331-0657
Email: office@theliulawfirm.com

*Counsel for Plaintiff*